[880 NYS2d 60]

In the Matter of CITY OF NEW YORK, Appellant, v ANTONIA C. NOVELLO, as Commissioner of the New York State Department of Health, et al., Respondents.

First Department, June 4, 2009

### APPEARANCES OF COUNSEL

*Michael A. Cardozo,* Corporation Counsel, New York City (*Marta Ross, Edward F.X. Hart* and *Joshua Rubin* of counsel), for appellant.

*Andrew M. Cuomo,* Attorney General, New York City (*Scott J. Spiegelman, Michael S. Belohlavek* and *Carol Fischer* of counsel), for respondents.

### OPINION OF THE COURT

RENWICK, J.

In this case of statutory interpretation, the issue is whether the State can disregard a particular statutory directive to act within a specified time. The issue arises within the context of a dispute between New York State and the City of New York over the timeliness of the State's revocation of a $27 million reimbursement to the City for home health care services the City provided. The State argues that the statutory deadline to invoke the revocation is merely directory. This Court, however, finds that the State may not disregard peremptory language that contains a plain, clear and distinct expression of mandatory legislative intent.

The seeds of this dispute were sown by the State Legislature when it promulgated legislation intended to reduce the recent spiraling costs of home-health-care-related services. Home health care services provided throughout the state by localities like the City of New York are eligible for reimbursement under the State's Medicaid program, which is jointly funded by the federal government and participating states (Social Services Law § 365-a). The State pays 40% of the cost of home health care services provided by localities, the federal government pays 50%, and the locality itself pays the remaining 10%.

The Legislature enacted a target method to compel local social services districts to reduce the cost of home health care. Specifi-

cally, pursuant to chapter 62, part Z2, § 26 of the Laws of 2003, the New York State Department of Health (DOH) developed "district-specific targets" (savings targets) to create incentives for each local district, such as the City of New York, to efficiently manage the cost of home health care services. The statute provides a methodology for calculating savings targets for a given year, and identifies "target periods" for DOH to analyze in determining if the City, as well as the other localities, is meeting the savings target set for it. Since 1997, the Legislature has enacted the target methodology, and reenacts it periodically to cover specific periods of time.

The statute provides that if the local district fails to meet the savings target, DOH will "intercept" home health care service payments and other payments to the district in an amount "sufficient to reimburse the state for [the amount the district exceeded] the savings target" (*id.*, amending L 1997, ch 433, § 36 [6]). The intercept process occurs in four stages. In the first stage, by January 1 of the applicable year, DOH notifies each district as to its progress toward reaching the savings target (L 1997, ch 433, § 36 [3], as amended by L 1999, ch 412, part F, § 31, L 1999, ch 1, § 43 and L 2003, ch 62, part Z2, § 26). By March 1, DOH again notifies the district as to its progress toward reaching the savings target, and specifies an amount, if any, by which DOH projects that the district will fall short, and the amount of state payments DOH would intercept (L 1997, ch 433, § 36 [4] [a], as amended through L 2003, ch 62, part Z2, § 26). In the third step, DOH makes an initial intercept by March 31, if it projects that a district will fail to meet its savings target (L 1997, ch 433, § 36 [5] [a], as amended through L 2003, ch 62, part Z2, § 26). Finally, "as soon as possible, *but in no event later than three months after the end of the target period*," DOH makes the final intercept if its final calculation indicates the district failed to meet the savings target, or issues a refund if the initial intercept exceeded the final calculation (L 1997, ch 433, § 36 [6], as amended through L 2003, ch 62, part Z2, § 26 [emphasis added]).

The relevant target period in this case is fiscal year 2003-2004. At the inception, DOH set a savings target amount of $32,003,775. On or about March 24, 2004, it made an initial estimate that the City of New York would fall short of the target by $1,391,461, but did not set a final intercept by the end of the required statutory deadline of June 30, 2004. Instead, for some unexplained reason, DOH delayed its decision for another four

months. Specifically, on October 29, 2004, DOH notified the City of its final calculation, demanding a final intercept of $27,375,822.*

Faced with this dilatory final intercept, which was more than $25 million over the initial estimate, the City of New York commenced this CPLR article 78 petition, challenging the timeliness of the final intercept and the calculations that went into it, and issue has been joined. Initially, Supreme Court found that the language requiring the final intercept to occur "in no event later than three months after the end of the target period" was not merely directory but mandatory. Accordingly, Supreme Court held that the final intercept, which occurred well after the June 30, 2004 deadline, was invalid, and granted the petition to this extent. However, DOH was properly held to have retained the initial intercept amount because the City had failed to carry its burden of demonstrating that the methodology used by DOH in calculating the initial intercept was improper.

On reargument, the court adhered to the part of its prior decision that DOH's calculations were rational, but reversed itself as to the timeliness of the final intercept, reasoning that provisions directing a public officer to do an act at a certain time are generally directory without any negative words restraining it from doing the act afterwards. The court thus found the final intercept timely, and denied the petition.

While mindful that the line between mandatory and directory statutes cannot be drawn with precision (*People v Karr*, 240 NY 348, 351 [1925]), we disagree with the court's directory reading of the provision limiting the time for the State to perform the final intercept. This type of issue must be resolved on a case-by-case basis, but in determining whether a statute is mandatory or directory, our primary consideration must be to ascertain and give effect to the intent of the Legislature (*Matter of McCulloch v New York State Ethics Commn.*, 285 AD2d 236, 238-239 [2001]; *see also Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]).

---

* DOH's final intercept calculation corrected two errors it had made during its interim calculation. First, the interim calculation projected that more Medicaid recipients were receiving home care services during the final three months of the nine-month target period than were actually receiving such services. This resulted in an incorrect decrease in the per-recipient cost of home care services provided. DOH also adjusted a wage exemption from 9.8% to 13.1%, about which the City had alerted DOH, and which resulted in reducing the City's expenditures by $138 million.

With regard to provisions directing public officials to take action within certain time limits, the general rule is that such limits will be considered directory, absent evidence that such requirements were intended by the Legislature as a limitation on the authority of the body or officer (*Matter of Grossman v Rankin*, 43 NY2d 493, 501 [1977]; *see also Munro v State of New York*, 223 NY 208 [1918]). Conversely, a mandatory interpretation is justified where "the nature of the act to be performed, or the language used by the legislature, show[s] that the designation of the time was intended as a limitation of the power of the officer" (*People v Allen*, 6 Wend 486, 487 [1831]; *see e.g. Matter of King v Carey*, 57 NY2d 505 [1982]; *see also Matter of Gonkjur Assoc. v Abrams*, 57 NY2d 853 [1982]).

Accordingly, courts have consistently ruled that when the phraseology or language of the statute not only provides a time limit upon an administrative agency to act, but also a limitation on the authority of the agency if it does not act within the required period, that language indicates a legislative intent to make the time limit mandatory, rather than directory (*Matter of 400 Delaware Ave. Prop. Co. v State of N.Y. Div. of Hous. & Community Renewal*, 105 AD2d 1046 [1984]). For instance, the Legislature's inclusion of a "specific consequence to flow from the administrative agency's failure to act within the time limit establishes that the time limit was not a mere unessential particular," and thus cannot be viewed as directory (*Matter of Janus Petroleum v New York State Tax Appeals Trib.*, 180 AD2d 53, 55 [1992] [subsequently amended statute provided that if agency failed within three months to issue a notice of refusal to register the applicant as a diesel fuel distributor, then the agency "shall" register the applicant]).

In this case, we are of the view that the legislative intent is discerned solely from the peremptory language of the statute itself. The Legislature coupled the affirmative directive that the intercept must be done "as soon as possible" with the negative prohibition "in no event later than three months." The particular juxtaposition of the affirmative act to be performed with the negative language limiting performance to the prescribed time frame indicates an unequivocal legislative intent that a specific time provision must be met, and is thus tantamount to an unmistakable limitation on the Department's authority to act once the time period has closed. Where the statutory language is so clear and unambiguous as to belie any interpretation other than its expressed peremptory term, courts are without author-

ity to enlarge or limit this unambiguous language (*Marcus Assoc. v Town of Huntington,* 45 NY2d 501, 505 [1978]; Matter of *Matter of Grossman v Herkimer County Indus. Dev. Agency,* 60 AD2d 172, 178 [1977]; McKinney's Cons Laws of NY, Book 1, Statutes §§ 76, 94).

This Court may not disregard peremptory language that contains a plain, clear and distinct expression of mandatory legislative intent, absent a clearly contrary expression. No other provision of the savings target statute gives an indication that the time limitation provided for DOH to act was meant to be anything other than mandatory. In addition, this Court has reviewed the relevant legislative history, in which the Legislature sheds no light whatsoever on the legislative intent of the provision. This is not surprising, since the Legislature has expressed itself most emphatically and plainly by the peremptory language ("in no event") used in the mandatory provision, leaving no room for the suggestion and possible debate as to whether it was intended to be directive.

Nor are we persuaded by respondents' argument that the mandatory construction of the statutory deadline for the State to act is inconsistent with the purpose of the savings target statute. It is undisputed that the general purpose of the statute is to enable DOH to achieve savings for the State. It is, however, also undisputed that any such savings are to be carried out at the expense of the local social services districts, which are striving to reduce their home health care services by the targeted amount. It is thus apparent that the time limit is essential to the ability of any affected district, like the City of New York, to manage its own budget in a timely manner. Of course, this could not reasonably be accomplished where DOH is able to intercept funds at virtually any time, leaving the districts with no means to project accurately their available funds and thus avoid any deleterious effect from any unexpected budgetary changes. Under the circumstances, the time frame for the administrative agency to act cannot be viewed as "a mere unessential particular," and thus simply directory (*cf. Matter of Gonkjur Assoc. v Abrams,* 57 NY2d 853 [1982]).

The case law on which respondents rely (*e.g. Giant Supply Corp. v City of New York,* 248 AD2d 231 [1998] and *Matter of Sinawski v Cuevas,* 123 AD2d 548 [1986], *lv denied* 68 NY2d 609 [1986]), which has interpreted the term "shall" and similar language as merely directory, does not persuade us to reach a different result. These cases are readily distinguishable. They

stand for the incontrovertible proposition that while the word "shall" (and similar language) is generally regarded as mandatory, it may be given a directory meaning where it is evident from the entire act—in context and purpose sought to be served—that it was not intended to receive a peremptory construction (*see e.g. Matter of 140 W. 57th St. Corp. v State Div. of Hous. & Community Renewal, Off. of Rent Admin.*, 130 AD2d 237 [1987]). Here, in contrast, as fully explained above, respondents have failed to demonstrate any circumstance suggesting that the language, peremptory in form, should not be given its peremptory meaning.

In short, where, as here, an administrative body fails to comply with a mandatory provision that directly affects its determination, such a determination will not be permitted to stand. Given this resolution, we need not address petitioner's argument regarding the calculation of the intercept.

Accordingly, the order of the Supreme Court, New York County (Debra A. James, J.), entered February 5, 2007, which, upon reargument of a prior order, and to the extent appealed from as limited by the briefs, denied the petition, granted respondents' cross motion declaring lawful their intercept of $28.6 million, and dismissed this proceeding, should be reversed, on the law, without costs, the cross motion denied and the petition granted. The appeal from the order of the same court and Justice, entered March 30, 2006, should be dismissed, without costs, as subsumed in the appeal from the later order.

TOM, J.P., BUCKLEY and MOSKOWITZ, JJ., concur.

Order, Supreme Court, New York County, entered February 5, 2007, reversed, on the law, without costs, respondents' cross motion denied and the petition granted. Appeal from order, same court, entered March 30, 2006, dismissed, without costs, as subsumed in the appeal from the later order.